UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| VESTOR C. HERROD, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:11-CV-01491 |
| ) | |
| TROY STEELE, ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM AND ORDER**

Petitioner Vestor Herrod is currently incarcerated in the Potosi Correctional Center in Mineral Point, Missouri. Petitioner was convicted by a jury in the Circuit Court of the City of St. Louis, Missouri, of forcible rape, attempted forcible sodomy, and first-degree burglary.

This matter is before the Court on Herrod's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner raises eleven grounds for relief. By Order dated December 7, 2011, the Court ruled that eight of these grounds for relief have been procedurally defaulted by Petitioner. (Doc. No. 12.) Because the remaining three grounds for relief are without merit, Herrod's petition for the writ will be denied, for the reasons discussed below.

## **BACKGROUND**

### **I. Factual Background**

The charges against Petitioner arose from events that occurred on July 12, 2006. M.G. had just returned home and was unlocking her front door, when she was approached by Petitioner, who asked about cutting her lawn. M.G. said no because she did not have any money. Petitioner offered to cut the lawn for free. While Petitioner was mowing the lawn, M.G. went to her bedroom to answer the telephone. Shortly thereafter, Petitioner entered the house and asked M.G. if he could

wash his hands. M.G. said yes, and Petitioner went into the bathroom to wash his hands. He then came into M.G.'s bedroom and shut the door behind him.

Petitioner knocked M.G. down, onto a couch. He stood over her, pulled out his penis, and tried to stick his penis into her mouth. M.G. kept her mouth closed and steered her head away from him. Petitioner than removed M.G.'s shorts and forced her to have sexual intercourse.

After Petitioner left, M.G. called her sister and the police for help. She went to the hospital for a rape kit. Jeanne Sanders, a registered nurse, performed the exam and collected the evidence in the rape kit. Sanders testified that she collected the shirt and shorts that M.G. was wearing. Sanders did not observe any bruises or injuries on M.G. But, in Sanders' experience, it was not uncommon for a victim to be uninjured. Sanders testified that the attending physician, Dr. Peggy Petralia, noted in the medical report that there were no external or internal lesions.

Police seized a beer can and cigarettes lying on the floor from M.G.'s bedroom. DNA consistent with Petitioner's was found on one of the cigarettes and on the rim of the beer can. DNA consistent with Petitioner was also found on a swab taken from M.G.'s face.

Several weeks later, Petitioner returned to M.G.'s house, and M.G.'s niece answered the door. Petitioner told her that he wanted to cut the grass. When M.G. looked out the window and saw Petitioner, she called the police. M.G.'s niece and nephew kept Petitioner occupied until the police arrived and arrested him.

## II. Procedural Background

On August 10, 2006, Petitioner was charged with forcible rape, attempted forcible sodomy, and first-degree burglary. The jury found Petitioner guilty on all three counts. On August 22, 2008, the trial court sentenced Petitioner to 25 years on the forcible rape conviction, 20 years on the

attempted forcible sodomy conviction (to run concurrently with the sentence for forcible rape), and 14 years on the burglary conviction (to run consecutively with the other sentences).

Petitioner appealed his conviction to the Missouri Court of Appeals, arguing that: (1) the trial court erred in denying his request for a mistrial after the prosecutor improperly personalized closing argument to the jury; (2) the trial court erred in denying his request for a mistrial after Detective Karon Crocker testified that Petitioner had provided no statement to the police; and (3) he was denied his constitutional and statutory rights to a speedy trial and thus the trial court erred in denying his motion to dismiss the charges against him on this basis. The Missouri Court of Appeals affirmed the conviction in a per curiam unpublished opinion on October 13, 2009.

On December 1, 2009, Petitioner filed a *pro se* motion in the trial court for post-conviction relief under Missouri Rule 29.15. Petitioner asserted two claims of ineffective assistance of counsel, contending that: (1) his appellate counsel failed to challenge the sufficiency of the evidence of his burglary conviction on appeal and (2) his trial counsel failed to subpoena and call Dr. Petralia at trial. The motion court, after an evidentiary hearing, denied Petitioner's motion on August 26, 2010.

Petitioner appealed the denial of his motion to the Missouri Court of Appeals, asserting the same claims of ineffective assistance of counsel. The appellate court affirmed the motion court's ruling in a per curiam unpublished opinion on October 11, 2011.

Petitioner now seeks federal habeas corpus relief, contending that: (1) the trial court erred in denying his motion to dismiss for violation of his right to a speedy trial; (2) the trial court erred in denying his motion for a mistrial when Detective Karon Crocker testified that Petitioner had not provided a statement to the police; and (3) the trial court erred in denying his motion for a mistrial when the prosecutor improperly personalized his closing argument, stating, "Imagine when you have a man you don't know on top of you, holding you down, putting his penis in your vagina. ... Imagine

being raped."

## DISCUSSION

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") strictly limits a federal court's power to review habeas petitions brought by state-court prisoners. "Pursuant to [AEDPA], when a state prisoner files a petition for writ of habeas corpus in federal court [the court is] directed to undertake only a limited and deferential review of underlying state court decisions." *Mark v. Ault*, 498 F.3d 775, 782-83 (8th Cir. 2007) (quotations omitted). "As the Supreme Court has stated, '[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under law.'" *Id*. at 783 (quoting *Bell v. Cone*, 535 U.S. 685, 692, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002)). Given these considerations, an application for habeas corpus

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States ....

28 U.S.C. § 2254(d). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or ... decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413, 120 S.Ct. 1495. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).

**I.      Speedy Trial**

Petitioner was arrested on August 10, 2006, on which date he was incarcerated and unable to make bond. Trial commenced over 18 months later, on February 19, 2008. Petitioner requested, and was granted, two continuances constituting, together, approximately six months of the delay in issue. The Missouri Court of Appeals found the remaining delay attributable to the State—approximately 12 months—presumptively prejudicial under Missouri law and, accordingly, proceeded to analyze the matter under federal law to determine, *inter alia*, whether the delay constituted actual prejudice. *See Herrod v. State*, No. ED-91879, Slip Op. at 11-12 (Mo. Ct. App. Oct. 13, 2009).

In denying Petitioner's speedy trial claim, the Missouri Court of Appeals relied on the analysis of *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In *Barker*, the Supreme Court explained that speedy trial cases are to be evaluated by a balancing test "that necessarily compels courts to approach speedy trial cases on an ad hoc basis." *Id*. at 529, 92 S.Ct. 2182. *Barker* identified four factors that figure prominently in this inquiry: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id*. Prejudice to a criminal defendant, under *Barker*, means "actual prejudice," unless the pretrial delay is "grossly excessive." *Rashad v. Walsh*, 300 F.3d 27, 41 (1st Cir. 2002) (citing *United States v. Aguirre*, 994 F.2d 1454, 1458 (9th Cir. 1993)) (delay of five years and eight months between indictment and trial did not violate petitioner's speedy trial right).

After finding presumptive prejudice under Missouri law, it was proper for the Missouri Court of Appeals to engage in a *Barker* analysis, as "presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria ...." *Doggett v. United States*, 505 U.S. 647, 656, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (citing *United States v. Loud Hawk*, 474 U.S. 302,

315, 106 S.Ct. 648, 654, 88 L.Ed.2d 640 (1986)). The Missouri Court of Appeals concluded, ultimately, that Petitioner's speedy trial claim failed because he "did not present evidence of actual prejudice." *Herrod*, Slip Op. at 17 (Mo. Ct. App. Oct. 13, 2009). The state court's decision was neither contrary to nor an unreasonable application of federal law.

The state court correctly identified the Supreme Court precedent governing the issue, and the Supreme Court has not "decide[d] a case differently ... on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13, 120 S.Ct. 1495. Furthermore, the state court decision was not an unreasonable application of the relevant precedent. Because the *Barker* standard is a general, multi-factor standard, "a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009); *see also Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

"A showing of prejudice is required to establish a violation of the Sixth Amendment Speedy Trial Clause, and that necessary ingredient is entirely missing here." *Reed v. Farley*, 512 U.S. 339, 353, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994). Petitioner made only generalized claims that delays caused him anxiety and rendered him unable to work—claims insufficient to make the required showing of prejudice. *See, e.g.*, *U.S. v. McGhee*, 532 F.3d 733, 740 (8th Cir. 2008) (citing cases) ("although anxiety and concern are present in every case, this alone does not demonstrate prejudice"). Notably, Petitioner did not claim that his defense was impaired by the delay, but rather conceded before the Missouri Court of Appeals that he "does not assert that he could prove his defense has been impaired, or that witnesses have disappeared or became otherwise unavailable."

*Herrod*, Slip Op. at 16; *see also Doggett*, 505 U.S. at 655, 112 S.Ct. 2686 (actual prejudice would not be present where the defendant "failed to make any affirmative showing that the delay weakened his ability to raise specific defenses, elicit specific testimony, or produce specific items of evidence"); *West v. Symdon*, 689 F.3d 749, 753 (7th Cir. 2012) (noting the possibility that the defense will be impaired is the most significant inquiry under *Barker* because the fairness of the proceedings is undermined by an inadequately prepared criminal defendant).

Petitioner did claim that the delay allowed the prosecution to develop incriminating DNA evidence against him. Indeed, much of the delay was due to the case's complexity and, in connection therewith, the crime lab's backlog in processing DNA evidence. But, as the Missouri Court of Appeals explained: "The defendant fails to recognize ... that this DNA evidence could very well have been exculpatory. The fact that the results proved favorable to the State and not the defendant is not grounds upon which to base a finding of prejudice." *Herrod*, Slip Op. at 16; *cf. also Brown v. Bobby*, 656 F.3d 325, 334 (6th Cir. 2011), *cert. denied*, --- S.Ct ----, 2013 WL 656045 (U.S. Feb. 25, 2013) (finding reasonable state court's attribution of some portion of "reasonable delay" under *Barker* to habeas petitioner because "[c]onsidering [that the] DNA evidence could have vindicated [petitioner], he certainly had an interest in its being completed").

Petitioner's failure to show prejudice prevents the Court from holding that the state court's speedy trial analysis was an unreasonable application of the Sixth Amendment right to a speedy trial. *See, e.g.*, *United States v. Shepard*, 462 F.3d 847, 864-65 (8th Cir. 2006) (17-month delay not a speedy trial violation where the defendant, among other deficiencies, failed to show prejudice to his case); *United States v. Brown*, 325 F.3d 1032, 1034-35 (8th Cir. 2003) (three-year delay did not relieve defendant of the requirement of showing prejudice). This ground for relief, accordingly, fails.

**II.     Detective Crocker's Testimony**

The crux of Petitioner's complaint regarding Detective Crocker's testimony arises from her answer to a question regarding what she did after receiving statements from the victim and the victim's niece. Detective Crocker answered: "The defendant was booked for the charges and provided no statement to me. He was processed." *Herrod*, Slip Op. at 4. Defense counsel objected and requested a mistrial. The trial court sustained the objection but denied defendant's request for a mistrial. Petitioner contends that a mistrial was the only proper remedy because the jurors must have wondered why Petitioner, when he was arrested, did not tell police that he was not the person who committed the crime. In other words, Petitioner contends that, through Detective Crocker's testimony, his silence was used to impeach him.

In upholding the denial of Petitioner's motion for a mistrial on this ground, the Missouri Court of Appeals concluded that, despite Petitioner's assumption that he was given *Miranda* warnings during booking, "nothing in the record [indicated] that *Miranda* warnings were given during booking or at any other time prior to when the defendant 'provided no statement.'" *Herrod*, Slip Op. at 7. On this basis, the state court concluded that *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), in which the Supreme Court held that use of a criminal defendant's post-arrest silence after receiving *Miranda* warnings violates due process, did not apply to the facts of Petitioner's case. Continuing, the Missouri Court of Appeals concluded:

> Even if the defendant had received his *Miranda* warnings during booking, we still would find no abuse of discretion in the trial court's denial of a mistrial. First, the detective's comment was not responsive to the prosecutor's question; defense counsel acknowledged at trial that the detective had volunteered the information. Moreover, the statement was isolated and the prosecutor did not later attempt to argue any inference from the statement. Finally, the trial court sustained defense counsel's objection and admonished the jury to disregard the testimony [which was] sufficient to prevent the jury from fixating on this isolated statement.

*Herrod*, Slip Op. at 7. Additionally, the state court concluded that if in fact the silence occurred after Petitioner received his *Miranda* warnings, this was not a basis to overrule the trial court's denial of

Petitioner's motion for a mistrial. *See id.* at 7-8; *see also Fletcher v. Weir*, 455 U.S. 603, 606, 102 S.Ct. 1309, 1312, 71 L.Ed.2d 490 (1982) (per curiam) (holding that impeachment by post-arrest pre-*Miranda* silence did not violate *Doyle*, rejecting the argument that "arrest, by itself, is governmental action which implicitly induces a defendant to remain silent").

Where, as here, it is unclear from the record "what point in time, if ever," Petitioner received his *Miranda* warnings, the Eighth Circuit has at least once, in reviewing a state prisoner's habeas petition, concluded that "a remand for an evidentiary hearing concerning the timing of the *Miranda* warnings is necessary." *Vick v. Lockhart*, 952 F.2d 999, 1003-04 (8th Cir. 1991) (citing *United States v. Massey*, 687 F.2d 1348, 1353 (10th Cir. 1982)).

The Court believes that *Vick* is distinguishable from the instant case, however, and that an evidentiary hearing concerning the timing of the *Miranda* warnings, if any, is unwarranted.

First, in *Vick*, the defendant's silence was used in cross-examining the defendant himself, used repeatedly, and used so as to draw meaning from it.

> Q: ... You turned yourself into the police department, right?
>
> A: That's right.
>
> Q: And I'm sure when you turned in, you told them all this, right?
>
> A: No, I didn't tell them anything.
>
> Q: You didn't tell them a thing, right?
>
> A: No, sir.
>
> Q: Why not?
>
> A: They didn't ask me.
>
> Q: You think that's something they've got to ask you?
>
> A: Well, I understand that they [were] looking for me. They told me ...
>
> Q: They didn't ask you if you wanted to make a statement?

> A: No.
>
> Q: They didn't.
>
> A: My lawyer had already warned me that I didn't have to make one unless I wanted to.
>
> Q: Pardon me?
>
> A: My lawyer had informed me that I didn't have to make one unless I wanted to. Of course, they didn't ask me to make a statement anyway.
>
> Q: They didn't even ask you, huh?
>
> A: No. The attorney came to me. I answered the questions that he asked me.
>
> Q: Didn't you sign a rights form and that kind of thing?
>
> A: Correct.
>
> Q: And you refused to make a statement?
>
> A: That's right.
>
> Q: Okay, so you refused to make a statement.
>
> A: That's right.
>
> Q: Okay. Knowing that this—what you're telling the jury here today is in your mind totally—
>
> [Defendant's counsel]: Your Honor, I'm going to object.
>
> The court: That's going to be sustained.

952 F.2d at 1000. In the instant case, by contrast, Petitioner's silence was introduced via direct examination of a prosecution witness in a manner that was "not responsive to the prosecutor's question" and "isolated." *Herrod*, Slip Op. at 7.

Second, in *Vick*, "Vick's counsel did not move for a mistrial, nor request a curative instruction." 952 F.2d at 1000. Here, however, "the trial court sustained defense counsel's objection and admonished the jury to disregard the testimony," which the Missouri Court of Appeals concluded was "sufficient to prevent the jury from fixating on this isolated statement." *Herrod*, Slip

- 10 -

Op. at 7. Further, Petitioner's counsel had "immediately objected and requested a mistrial." *Id.* at 4-5. These circumstances are precisely opposite those present in *Vick*.

Lastly, because *Vick* is a pre-AEDPA case, it did not purport to reflect clearly established law as set out by the Supreme Court. *See Parker v. Matthews*, --- U.S. ----, 132 S.Ct. 2155, 2153, 183 L.Ed.2d 32 (2012).

In short, although the testimony given by Detective Crocker's testimony is potentially suspect, under a contextualized analysis, as undertaken by the state court, the Court cannot conclude that the Missouri Court of Appeals acted unreasonably in denying Petitioner's request for a mistrial on this ground. *See Schriro v. Landrigan*, 550 U.S. at 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). In addition, the Court cannot conclude that the Missouri Court of Appeals "arrive[d] at a conclusion opposite to that reached by [the Supreme] Court … on a set of materially indistinguishable facts." *Williams*, 529 at 412-13, 120 S.Ct. 1495. Therefore, this asserted basis for relief is unavailing to Petitioner.

## III. Closing Argument

The final ground asserted by Petitioner is that the trial court erred in denying his motion for a mistrial when the prosecutor improperly personalized his closing argument, stating, "Imagine when you have a man you don't know on top of you, holding you down, putting his penis in your vagina. ... Imagine being raped."

As the Supreme Court has recently clarified: "The 'clearly established Federal law' relevant [to matters of prosecutorial misconduct] is our decision in *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), which explained that a prosecutor's improper comments will be held to violate the Constitution only if they '"so infected the trial with unfairness as to make the resulting conviction a denial of due process."' *Id.* at 181, 106 S.Ct. 2464 (quoting *Donnelly v.*

*DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974))." *Parker*, 132 S.Ct. at 2153.

Petitioner's prosecutorial misconduct claim is all but foreclosed by *Darden* itself, in which the Supreme Court held that a closing argument considerably more inflammatory than the one at issue here did not warrant habeas relief. *See* 477 U.S. at 180 n.11, 106 S.Ct. 2464 (prosecutor referred to the defendant as an "'animal'"); *id*. at 180 n.12, 106 S.Ct. 2464 ("'I wish I could see [the defendant] with no face, blown away by a shotgun'").

Further, the *Darden* standard "is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations ....'" *Parker*, 132 S.Ct. at 2155 (quoting *Yarborough*, 541 U.S. at 664, 124 S.Ct. 2140). As such, the Court does not find unreasonable the Missouri Court of Appeals analysis, concluding that: (1) "[t]he prosecutor's improper comments were isolated"; (2) "[t]he trial court promptly sustained defense counsel's objection and instructed the jury to disregard the prosecutor's statement"; and (3) "the defendant has not shown prejudice from the comments." *Herrod*, Slip Op. at 4. Petitioner's final ground for relief is thus without merit.

## CONCLUSION

**IT IS HEREBY ORDERED** that, in accordance with the foregoing, Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. No. 1) is **DENIED**, and his claims are **DISMISSED** with prejudice. A separate Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that, because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir.1997).

**IT IS SO ORDERED**.

Dated this 4th day of April, 2013.

                                          /s/Jean C. Hamilton  
                                          UNITED STATES DISTRICT JUDGE